TEXTO COMPLETO DE LA SENTENCIA
Mediante el recurso de epígrafe, el Ledo. Raúl E. Rondón Medina (Ledo. Rondón) nos solicita que revoquemos la resolución emitida el 24 de mayo de 2002 por la Junta de Apelaciones para Empleados Gerenciales de la Corporación del Fondo del Seguro del Estado (“la Junta”). Dicha resolución ordenó el archivo con perjuicio de la querella Núm. JA-01-23 debido a la incomparecencia del apelante a la vista en los méritos. Ponderado el expediente y analizado el derecho aplicable, expedimos el auto de revisión solicitado y revocamos la decisión de la Junta.
I
Desde el 1 de julio de 1985, el Ledo. Rondón ocupó un puesto de confianza como Subdirector de Relaciones Laborales en la Corporación del Fondo del Seguro del Estado (en adelante “FSE’). Posteriormente, en el año 1998, fue seleccionado, mediante convocatoria, para idéntico cargo como empleado gerencial regular o de carrera.
El 18 de abril de 2001, el Subdirector Auxiliar de Recursos Humanos, Sr. Luis A. Villanueva, envió'una comunicación al apelante informándole sobre una querella de hostigamiento sexual radicada en su contra en la Oficina de Igualdad de Oportunidades en el Empleo del FSE. Se le notificó, además, que como medida preventiva sería trasladado a la Oficina Regional de San Juan, donde se desempeñaría como subdirector. Según *669 alega el recurrente, en dicha oficina fue despojado de sus funciones y su sueldo le fue retenido, lo que le causó serios inconvenientes y angustias mentales. 
Más tarde, el 1 de junio de 2001, se le entregó otra carta de traslado, caracterizado por el recurrente como “permanente”, a la Oficina Regional de Bayamón. Allí, fue reubicado en el puesto 2764 de Asesor Legal I en la Oficina de Adjudicaciones. Sostiene el apelante que en tal carta no se le formuló cargo alguno, no se le indicó el resultado de la querella que pendía en su contra, ni el motivo de su traslado. Señala el Ledo. Rondón que en esta oficina se mantuvo por espacio de tres (3) meses despojado de sus funciones.
El 28 de junio de 2002, el Ledo. Rondón presentó su escrito de apelación ante la Junta aduciendo que su traslado era ilegal y reclamando el despojo de sus funciones. Luego de varios incidentes procesales, el 5 de febrero de 2002, el apelante solicitó una “Resolución Sumaria” de la controversia. Reiteró que la única cuestión a ser dilucidada era lo relativo a la ilegalidad del traslado, lo cual era una cuestión de derecho, por lo que procedía que la Junta emitiera un dictamen con carácter sumario. Dicha solicitud fue declarada no ha lugar por la Junta el 4 de marzo de 2002. En dicha resolución se señaló la vista en su fondo para el 22 de mayo de 2002.
Así las cosas, el 21 de mayo de 2002, el Ledo. Rondón radicó una moción solicitando la suspensión de la vista en su fondo y la paralización de los procedimientos. Adujo que ciertos funcionarios de la Administración del FSE allanaron su oficina sin su consentimiento. Por tal motivo, decidió días antes de la vista contratar a un abogado para que lo representara.
El Ledo. Rondón no compareció a la vista en su fondo. Mediante resolución del 24 de mayo de 2002, notificada el 28 de mayo de 2002, la Junta decretó el archivo del caso con perjuicio, no sin antes mencionar que la moción de suspensión había sido presentada tardíamente, por lo que no había podido ser considerada por ésta. Además, utilizó como fundamento que los testigos del caso fueron llamados por el propio apelante para que no comparecieran a la vista, y que ni él ni su representación legal asistieron sin ser previamente excusados.
Inconforme con dicha resolución, el Ledo. Rondón recurrió ante este Tribunal en recurso de revisión presentado el 26 de junio de 2002. Señaló la comisión de dos errores por el foro administrativo, a saber:

“1. ERRO LA HONORABLE JUNTA DE APELACIONES DEL (sic) CORPORACION DEL FONDO DEL SEGURO DEL ESTADO AL DECRETAR EL ARCHIVO CON PERJUICIO DE (sic) CASO (JA-01-23) POR INCOMPARECENSIA (sic) DEL APELANTE DE LA VISTA SEÑALADA.

2. ERRO LA HONORABLE JUNTA DE APELACIONES EL 5 DE MARZO DE 2002 AL DECLARAR A (sic) NO HA LUGAR LA MOCION DEL 5 DE FEBRERO DE 2002 DEL APELANTE SOLICITANDO RESOLUCION/SENTENCIA SUMARIA. ”

Contando con la comparecencia del recurrido FSE en oposición a la solicitud de revisión, nos encontramos en posición de resolver.
II
Como cuestión de umbral, debemos atender los planteamientos jurisdiccionales esbozados por el FSE en su escrito de oposición. Es norma establecida que las cuestiones relativas a la jurisdicción de un tribunal, por ser privilegiadas, deben resolverse con preferencia a cualesquiera otras. Arriaga v. F.S.E., 145 D.P.R. 122, 127 (1998); Autoridad Sobre Hogares v. Segastivela, 71 D.P.R. 436 (1950).
El FSE fundamenta la falta de jurisdicción de este foro en el alegado incumplimiento del recurrente con las disposiciones de nuestro reglamento. En particular, aduce que la solicitud de revisión omite el nombre de la agencia administrativa en el epígrafe, además del número de colegiado y fax del recurrente, el nombre de la *670 representación legal de la recurrida y el número de teléfono de esta última. También llama nuestra atención a que no se incluyeron las órdenes emitidas por la Junta y copia de la Moción Informativa y en Cumplimiento de Orden presentada ante ésta. Igualmente, alega que se incluyeron documentos incompletos en el Apéndice y la falta de numeración de sus páginas.
Como se sabe, los abogados están obligados a cumplir fielmente con el trámite prescrito en nuestro reglamento para el perfeccionamiento de los recursos, no quedando a su arbitrio la decisión de cuáles disposiciones reglamentarias deben acatar y cuándo. No empece a lo anterior, en Andrés Román Velázquez v. Andrés Román Hernández, Opinión Per Curiam de 24 de septiembre de 2002, el Tribunal Supremo resolvió que: “[cjomo regla general, el mecanismo procesal de la desestimación como sanción debe utilizarse como último recurso. Por consiguiente, cuando el tribunal [de Circuito de Apelaciones] utiliza dicho mecanismo procesal en casos de incumplimiento con su Reglamento, debe cerciorarse primero que el incumplimiento haya provocado un impedimento real y meritorio para que el tribunal pueda atender el caso en los méritos.” 2002 JTS 132; 157 D.P.R._(2002).
Aplicada la norma arriba expuesta, se desprende que las omisiones o defectos en el escrito del recurrente no son de tal naturaleza que nos impidan realizar nuestra función revisora. Por lo tanto, declaramos no ha lugar a la desestimación solicitada.
III
Es principio reconocido en el derecho administrativo que la función revisora de los tribunales con respecto a las determinaciones de las agencias administrativas es una de carácter limitado. Ello, por razón de que las decisiones de éstas merecen gran deferencia y respeto de los tribunales debido a la experiencia y peritaje que gozan dichos organismos en las áreas de su competencia. ELA v. Frigorífico y Almacén del Turabo, Inc., 2001 J.T.S. 125, 154 DPR_(2001); Misión Industrial v. Junta de Planificación, 146 D.P.R. 64 (1998).
Las actuaciones administrativas gozan de una presunción de regularidad y corrección que prevalece mientras la parte que las impugne no produzca suficiente evidencia para derrotarlas. Henríquez v. Consejo de Educación Superior 120 D.P.R. 194, 210 (1987); Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).
De este modo, los tribunales han de limitarse a determinar si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que su actuación hubiese constituido un claro abuso de discreción. Rivera Rentas v. A&C Development Corp., 144 D.P.R. 450 (1997); Fuentes v. ARPE 134 D.P.R. 692 (1993); Murphy Bernabé v. Tribunal Superior, supra. Es deber primordial de los tribunales indagar sobre la razonabilidad de la decisión administrativa y no sustituir el criterio de dicho organismo por el suyo propio, a menos que se violen derechos constitucionales o que la actuación administrativa sea totalmente arbitraria. Henríquez v. Consejo de Educación Superior, supra; La Facultad para las Ciencias Aplicadas, Inc. v. C.E.S., 133 D.P.R. 521 (1993).
En vista de que dentro de su función adjudicativa las agencias administrativas han de intervenir con los intereses de libertad y propiedad de los individuos, se hacen extensivas a los procedimientos ante éstas las garantías a un debido proceso de ley. Nuestro Tribunal Supremo ha reiterado que si bien es cierto que el debido proceso no es un molde rígido que prive de flexibilidad a los órganos administrativos, una vez está en juego un interés individual de libertad o propiedad, hay que determinar cuál es el procedimiento exigido, el cual dependerá de las circunstancias dadas, salvaguardando siempre que el mismo sea justo e imparcial, no arbitrario. López Vives v. Policía de P.R., 118 D.P.R. 219, 230 (1987); Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881, 888 (1993).
“El debido proceso se manifiesta en dos dimensiones distintas: sustantiva y procesal. Bajo el debido proceso sustantivo, los tribunales examinan la validez de una ley, a la luz de los preceptos constitucionales *671 pertinentes, con el propósito de proteger los derechos fundamentales de las personas. Bajo este análisis, el Estado, al aprobar leyes o al realizar alguna actuación, no puede afectar de manera irrazonable, arbitraria o caprichosa los intereses de propiedad o libertad. Por otro lado, en el debido proceso de ley procesal se le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo.” Rafael Rosario & Assoc. v. Depto. Familia, 2002 J.T.S. 93, 157 D.P.R._(2002); Almonte et. al. v. Brito, 2002 J.T.S. 43, 156 D.P.R._ (2002); Rivera Rodríguez & Co. v. Lee Stowell, etc., supra, a la pág. 888.
Las fuentes del debido procedimiento de ley son varias. Entre ellas se encuentran la Constitución de Puerto Rico y la de los Estados Unidos, la Ley de Procedimiento Administrativo Uniforme (LPAU), la jurisprudencia y los reglamentos que gobiernan los procedimientos reglamentarios de cada agencia. Existe una diferencia entre el debido proceso de ley en su carácter constitucional y los derechos procesales consagrados por la vía estatutaria y reglamentaria. Estos últimos son de gran importancia, puesto que los requisitos procesales sólo se obtienen mediante una lectura de las disposiciones pertinentes de las agencias con la LPAU en un análisis que las interrelacione. Véase Fernández Quiñones Demetrio, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da. Ed., Bogotá, Forum, 2001, págs. 307-308.
Se han hecho extensivas a los procedimientos administrativos las siguientes garantías tradicionalmente reconocidas: la concesión a una vista previa, oportuna y adecuada notificación, derecho a ser oído, confrontarse con los testigos, presentar prueba oral y escrita a su favor, una decisión tomada a base del expediente administrativo y la presencia de un adjudicador imparcial. Henríquez v. Consejo de Educación Superior, supra; Ortiz Cruz v. Junta Hípica, 101 D.P.R. 791, 795 (1973). Véase además, Rivera Rodríguez & Co. v. Lee Stowell, etc., supra; Rafael Rosario & Assoc. v. Depto. Familia, supra. La LPAU igualmente reconoce las garantías antes señaladas en su sección 3.1. 3 L.P.R.A. see. 2151.
Por otro lado, en cuanto a la imposición de sanciones y la revisión judicial, los tribunales le han reconocido amplia discreción a las agencias administrativas en la selección de las medidas que le ayuden a cumplir los objetivos de las leyes cuya administración e implantación se les ha delegado, siempre que actúen dentro del marco de su conocimiento especializado y la ley. Bajo esta doctrina, si la decisión administrativa está basada en evidencia sustancial y no es ultra vires y tiene además una relación razonable con los actos que se quieren prohibir, los tribunales brindarán considerable deferencia a la sanción impuesta por las agencias. ELA v. Frigorífico y Almacén del Turabo, Inc.,supra; Comisionado de Seguros v. Antilles Insurance Company, 145 D. P.R. 226 (1998).
IV
En el caso de autos, el Reglamento de la Junta de Apelaciones para Empleados Gerenciales de la Corporación del Fondo del Seguro del Estado (Reglamento de la Junta) entró en vigor el 31 de agosto de 1999. El mismo fue creado en virtud de la sección 12.1 del Reglamento de Personal de la Corporación del Fondo del Seguro del Estado con el propósito de “atender y resolver en forma diligente, ordenada y justa todas las controversias, quejas, y querellas que pudieran surgir por parte de los empleados...". En la sección 12.2 del Reglamento de Personal se dispone que la Junta servirá de organismo apelativo sobre las decisiones del Administrador del Fondo.
El Reglamento de la Junta, en su Artículo 21, provee para una vista adjudicativa. De acuerdo al Artículo 20, toda suspensión de vista deberá ser solicitada por moción escrita presentada en un término no menor de (10) diez días con antelación a la fecha del señalamiento. Sin embargo, el artículo dispone que de no recibirse moción en término, o de no haber sido expresamente declarada con lugar, “la vista se llevará a efecto y se procederá al recibo de la prueba presente en Sala, a tenor con las normas aquí establecidas”. Una interpretación literal de dicho artículo no faculta a la Junta a decretar el archivo con perjuicio de un caso como sanción inicial. El Artículo 8 del Reglamento expresamente dispone un catálogo de sanciones donde *672 primeramente figuran sanciones económicas a la parte que incumple:

“La Junta podrá imponer sanciones a la parte que incumpla sus órdenes, o a su representante legal, las cuales puede (sic) incluir el pago de hasta doscientos dólares ($200.00), eliminación de alegaciones, anotación de rebeldía, eliminación de defensas y la desestimación de la apelación. ”

La sección 3.21 de la LPAU, 3 L.P.R.A. Sec.2170a, faculta a las agencias a imponer sanciones. En el inciso (b) autoriza expresamente a la agencia a: “[ojrdenar la desestimación de la acción en el caso del promovente, o eliminar las alegaciones en el caso del promovido, si después de haber impuesto sanciones económicas y de haberlas notificado a la parte correspondiente, dicha parte continúa en su incumplimiento de las órdenes de la agencia. ” (Enfasis nuestro).
Ante el marco normativo antes expuesto, apreciamos que en su función adjudicadora la Junta, al decretar, sin más advertencia o apercibimiento, el archivo del caso con perjuicio violó el debido proceso de ley del recurrente. Tal acción fue irrazonable, constituyó un claro abuso de discreción, e incidió en los derechos del Ledo. Rondón como empleado de carrera. El recurrente fue privado de uno de los requisitos fundamentales del debido proceso: derecho a ser oído en una etapa y de un modo significativo en cuanto a los hechos que motivaron su traslado. Analizado el esquema reglamentario pertinente en su totalidad, no encontramos base alguna para sostener el archivo con perjuicio del caso del Ledo. Rondón.
Por otra parte, el Artículo 14 del Reglamento de la Junta enumera taxativamente los fundamentos para desestimar un caso con perjuicio. Dispone que: “La Junta, luego de evaluar la totalidad del expediente ante su consideración, podrá decretar el archivo, con perjuicio, total o parcial de una apelación o desestimar una oposición o defensa levantada a la misma por los siguientes fundamentos’.
[[Image here]]

14.2. Cuando cualquiera de las partes no comparezca a la vista que le ha sido debida y oportunamente notificada y omita justificar su incomparecencia. ”

El archivo con perjuicio, equivalente a una desestimación, fue una medida sumamente drástica que tuvo el efecto de privar al recurrente de una vista en los méritos para dilucidar la controversia y presentar sus defensas al cuestionado traslado de oficina. Además, es norma reiterada en derecho que cuando se plantea una situación meritoria de sanciones, la severa sanción de la desestimación habrá de imponerse como último recurso, tan sólo después de que la parte haya sido debidamente informada y/o apercibida de la situación y no tome acción correctiva alguna. Maldonado v. Secretario de Recursos Naturales, 113 D.P.R. 494, 498 (1982). La desestimación, como sanción, sólo debe prevalecer en situaciones extremas que evidencien de modo claro e inequívoco la desatención y el abandono total de la parte con interés, y tras no resultar eficaces sanciones menos drásticas. No procede la desestimación sin previo apercibimiento. Municipio de Arecibo v. Almacenes Yakima del Atlántico, Inc., 2001 JTS 82; 154 D.P.R. (2001); López Rivera v. Rivera Díaz, 141 D.P.R. 194 (1996).
Concluimos que la Junta incumplió con su deber de imponer la sanción del archivo con perjuicio como último recurso conforme a la sección 3.21 de LPAU. La Junta debió haber impuesto una sanción menos drástica ante el incumplimiento del apelante, máxime cuando de los autos no se desprenden incumplimientos anteriores del Ledo. Rondón con el trámite de su apelación ante la Junta.
Por lo tanto, determinamos que la Junta viene obligada, como cualquier otra agencia administrativa, a salvaguardar las garantías procesales mínimas que exige la LPAU. De igual forma, ante un incumplimiento de una parte con el Reglamento de la Junta, ésta viene obligada a imponer sanciones por incumplimiento en una forma progresiva, utilizando la severa sanción de la desestimación como último recurso.
*673 V
Respecto al segundo error planteado por el recurrente en cuanto a la denegatoria de la solicitud de sentencia sumaria, basta señalar que el planteamiento carece de méritos. Según la sección 4.2 de la LPAU, 3 L.P.R.A. see. 2172 se dispone expresamente que “[u]na parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Circuito de Apelaciones... ” Es norma establecida de la doctrina de agotamiento de remedios administrativos que las resoluciones administrativas sujetas a revisión judicial han de ser finales. Padilla Falú v. Administración de Vivienda de Puerto Rico, 2001 J.T.S. 130, 155 D.P.R._(2001); Constructora Celta v. Autoridad de los Puertos, 2002 J.T.S. 1, 155 D.P.R._(2002).
La resolución cuestionada en el segundo error es claramente interlocutoria, por lo que no procede su revisión. A diferencia de una decisión final, una orden interlocutoria “significa aquella acción de la agencia en un procedimiento adjudicativo que disponga de un asunto meramente procesal”. 3 L.P.R.A. sec. 1.3(h).
VI
Por los fundamentos antes expuestos, se expide el auto de revisión solicitado, se revoca la resolución de la Junta de Apelaciones para Empleados Gerenciales de la Corporación del Fondo del Seguro del Estado de 24 de mayo de 2002, notificada el 28 de mayo de 2002 y se ordena la celebración de una vista en que se dilucide la querella del recurrente; todo ello sin perjuicio de la sanción económica correspondiente.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau Secretaria General
ESCOLIOS 2003 DTA 11
1. Reclama el apelante que ni siquiera se habilitó la máquina de ponchar para éste registrar su asistencia. Véase página 3, párrafo 6 de la petición de revisión.
2. De los escritos de las partes, aparenta existir una controversia relativa a la fecha en que la moción de suspensión de la vista fue presentada. Hemos tomado como fecha cierta la mencionada por la Junta de Apelaciones en su Resolución de 24 de mayo de 2002, ya que las comparecencias de las partes no incluyen copia de la moción con el sello de presentación.
3. Arriaga v. F.S.E., supra, a la pág. 130.